Good morning, everyone. Please be seated. All right. Before we call the case, I will advise both attorneys that each side will have an opportunity, approximately 15 minutes to present your argument. And from that, the appellant may save out some time for rebuttal. Would both of you that are going to argue step up and state your names for the record? Good morning, Your Honors. Assistant Appellate Defender Rachel Moran, on behalf of Gregory James. Good morning, Your Honors. Ranjit Pati, Assistant State's Attorney, on behalf of the people of Illinois. Good morning to both of you. All right. Moran, you may proceed. Good morning again, Your Honors. And may it please the Court, may I please reserve two minutes for rebuttal? Yes. Thank you. Your Honors, the question at the heart of this appeal is a simple one. How far may a trial court go in restricting a defendant's constitutional right to cross-examination? Illinois courts have repeatedly held that defendants should be given the widest latitude in questioning witnesses on matters related to credibility. In Greg James's case, the Court restricted questioning of the most crucial witness in the case, the alleged accomplice, Lee Stapleton. At trial, Stapleton testified that he committed the murder alone, without any help from Gregory James. The State, in turn, introduced into evidence two handwritten statements Stapleton had given implicating James in the murder. On cross-examination, he acknowledged that the State offered him a plea deal to armed robbery in exchange for testimony consistent with those earlier handwritten statements, and that he rejected the deal and pled guilty to first-degree murder. But the Court would not allow defense counsel to question him about the specifics of those deals. And the jury was prevented specifically from hearing four things. First, how much time Stapleton was offered on the armed robbery deal, that's 13 years. Second, how much time he faced for first-degree murder, and that was a range between 20 and 120 years, because the State at the time was seeking an extended term sentence. Third, how much time... How would you be able to let the jury know that that individual was facing between 20 and 120 years, without letting the jury know that the defendant on trial was facing between 20 and 120 years, thereby totally blowing out the ruling on the motion to eliminate? Your Honor, the specific question defense counsel sought to ask was, were you aware of how much time you could do on the first-degree murder charge? And that's what the Court... Doesn't the State have the right to keep the jury from knowing that the defendant on trial is facing at least 20 years? Don't they have that right? A couple of responses to that, Your Honor. The first is that the jury did not necessarily need to know that the range was the same for Stapleton and James. There's... I mean, that wouldn't make sense. We don't want juries to think that one person gets one thing and another person gets another. Right? If it's a charge, a murder charge, we don't want to give this idea out there that, you know, isn't the law supposed to be kind of equal? Well, no, practically speaking, Your Honor, some murder charges involve a minimum of 45, some involve 20. Yes, but that goes to the idea that you can't put things before the jury that they're not supposed to be concerned with because it may prejudice them against, you know, finding the facts without going off into other areas that they shouldn't be speculating on. So doesn't that feed into this whole idea about speculating? Well, he could get this, but we don't know what he could get. Maybe he could get more, maybe he could get less. They're going to be focusing on something that they're not supposed to be looking at because there is this general idea that you don't... that the jury does not get to hear about sentencing because that's not what their job is. The judge imposes the sentence. To turn right to the law on that, Your Honor, the case law that they're... essentially the defendant and the state have cited two opposing cases, both from the 3rd District. People v. Graves, which was the earlier case in which Mr. James cited, states that a defendant should be allowed to elicit the specific sentencing range an accomplice faced because it's relevant to that accomplice's credibility. In other words, what he gained or lost by giving his testimony. People v. Brewer... Were those plea agreement cases? Were those cases where the state had entered into an agreement with the accomplice? Yes, they were, Your Honor. Isn't the big difference here in this case is that we're sort of looking at something new here, and that is where the co-defendant, accomplice, whatever, he didn't agree to a particular plea agreement. In a way, Your Honor, it is. This specific factual context I would absolutely agree is new and has not been addressed in Illinois. However, the broader concept has very much been addressed. In People v. Triplett, the Illinois Supreme Court said that a cross-examination is a matter of right as to what a witness has gained or lost by his testimony. And here, defense counsel is trying to elicit what Stapleton lost by refusing to testify consistently with his handwritten statement. Well, how do we know he really lost anything? We know that he lost... Well, the jury didn't know, but we know that he lost... Effectively, taking into account truth in sentencing, nine years of freedom by rejecting the plea deal to armed robbery, which would have required... It was a 13-year deal, but would have required him to serve 11 years, taking into account truth in sentencing. Instead, he received 20 years for which he'll need to serve all of it. So he lost nine years. Well, didn't the jury know that he lost something because he decided for whatever reason that he was going with a different statement than what he had originally told everyone? The jury did know that he received more time. They did not know anything about the specifics of that. But if it were an agreement, if he had been party to a deal, I don't think there's any question that the law would require that the jury be advised about that. But this situation is different because he did not accept the deal. It's true he rejected the one deal, but he did accept an additional deal. And, Your Honor, according... What do you mean? But not for his testimony. That's true, Your Honor. Yes. It's just a plea deal. You don't testify, you get 20. By the State's position, with their argument with respect to Rule 402F... Did that come out in the trial, that there was a deal for 20? No, Your Honor. It wasn't allowed to come out. Defense counsel attempted to bring that information. But what was this other deal? Wasn't that part of the first deal, that if you wish to plead guilty and testify truthfully or whatever, consistent with your previous statements, we would agree to recommend a sentence of 13 years on the lesser charge or the sole charge of armed robbery. Exactly, Your Honor. But there was an additional deal that if you don't take that deal, we're going to recommend 20? No, I apologize if I've confused the court. I don't know that there was any deal. Where is this coming from, that there was some deal for the murder in 20? I'm not aware of that. Your Honor, I apologize if I misspoke. All I'm attempting to say is that he received a plea. He pled guilty to first-degree murder, and he received 20 years. It's not necessarily a negotiated deal with the State. Okay, so that wasn't something that would be considered normally relevant and material, that if he did enter into an agreement for a 20-year sentence, that was something that would be explored. If that was an agreement. According to the State, no, but I don't think that's totally necessary to the argument here. What is relevant is that he did lose something. He lost nine years by rejecting that deal, and that's by rejecting the 13-year plea to armed robbery, which would have required him to serve 11 years. But since we're dancing around about how many years somebody is potentially eligible to be sentenced, why wasn't it enough that the jury was told, and the judge allowed the jury to be told, that he was offered the right to plead guilty to a lesser charge for which he would receive a lesser sentence? Isn't that what happened? The jury did hear that he was offered a lesser charge. What you're saying is that's not enough? The jury was told, you were offered a deal, you could plead guilty to a lesser charge for which you would have gotten a lesser sentence than you're facing now, and you refused to do that. Why isn't that enough? Why do they have to know the number of years when there's a counterbalancing interest that the State has, that the number of years that someone's facing for murder charges shouldn't be put before the jury? Why isn't that a sufficient compromise? Your Honor, it's not enough because it doesn't allow the jury to determine. All they know is that he lost something. They have no idea what. They don't know if it was a significant personal loss or if it was a few months. Well, on that note, let me ask you this. How could we possibly know from this record that he lost nine years? Where is this coming from? You have to have something to show that there was a deal so that he lost exactly what you're saying. There is no record to support the idea that he actually lost nine years. Where is that coming from? Your Honor, we know he gave up a plea deal to 13 years, and we know he received 20. That's where that's coming from. Okay. But how can we say on this record, based on everything we know, that he actually gave up that nine years? Where is that? I'm not sure I understand because he didn't plead for the 13 and he got 20 that he lost this nine years. I mean, unless you're able to show that there was some specific deal that he was going to get 20 or he was going to get nothing else, how do we come up with that? Two responses, Your Honor. The first is the Supreme Court's decision in People v. Triplett, which addressed a similar situation in which the question of what the witness gained or lost was unclear because of the trial court's ruling. And in that situation, the Supreme Court said that cross-examination is a matter of right, even if it is imaginative or speculative. But was that an agreement again, the Triplett case? It was not, Your Honor. What was it? What were the circumstances? Your Honor, it involved a juvenile, the question of a juvenile witness's contacts with police. And so he was testifying against the defendant. The defense counsel tried to cross-examine about his previous, not a specific deal, but his relationship with the state and whether he had a motivation to testify against the defendant, which is similar to what we have here, whether Stapleton would have had a motivation. That was an attack on the witness's credibility, wasn't it? That was an attempt to bring the witness's testimony down. Do you have one case to cite that holds that you can bolster a witness's testimony, make a witness's testimony more believable because you refuse to plead guilty? I have two, Your Honor. The first is People v. Tenney, the Illinois Supreme Court, and it states that evidence is more reliable if given at a significant personal cost. And therefore, we would acknowledge this factual context is unique and it's not exactly what happened to Tenney either. But it said evidence is more reliable if given at significant personal cost, and therefore defense counsel should be able to cross-examine on the fact that somebody gave up something in order to What was the personal cost in Tenney? It involved a statement against interest, Your Honor. And so the witness in that case implicated himself, much like Stapleton did, and the court found Do you think that that's an analogous situation? If you implicate yourself, there's a body of case law that says that if you implicate yourself, that that's believable testimony. But we're relating that to a situation where someone refused to plead guilty  Well, defense counsel here wasn't An analogy wouldn't be appropriate because it's not exactly the same situation, but it is a comparison. Defense counsel here tried to ask that hook question, which the court is missing here on appeal. Why did you reject that plea deal? The specific question was whether that was the reason you pled guilty to first-degree murder instead of testifying consistently with those handwritten statements. And the court wouldn't let the witness answer. The court sustained that objection. But didn't he say that the reason he didn't do that was because the defendant here didn't participate and he wanted the truth to be told, that he was solely responsible for this murder? Didn't he explain that was why he did what he did? He didn't take the deal because the other person didn't commit the crime. And so he had to plead guilty to murder because that was the truth. What he said in front of the jury was that James did not participate in this murder. He was solely responsible, that is, Mr. Lee, what's his name? Stapleton, Your Honor. Mr. Stapleton. That he was the one solely responsible. He did say that he was the one solely responsible. There's no question that came out clearly. He didn't give the why. Well, let me ask you this. Isn't it? I'm sorry, go ahead. There's a few conflicting principles here. And we have this idea that generally the jury shouldn't be engaging in speculation about sentencing. We have a pre-emotional remedy requesting specifically that the jury not be told about sentencing. Then we have this other notion that you cannot use a, you can't bolster, okay? You can't support a statement and try to make it consistent with something else you've done. And isn't that something here that's at play here that, do you understand what I'm saying? I do, Your Honor. I believe you're referencing the State's comment that this is similar to a prior consistent statement. Yes, aren't you simply really trying to bolster the witness's testimony? And you wouldn't be allowed to do that indirectly, or directly rather, but you're trying to do it indirectly with this whole discussion about the sentencing. In a sense, Your Honor, this is not a prior consistent statement. The law in prior consistent statements is very specific. You cannot, the problem with a prior consistent statement is that a jury is more likely to believe something that has been said multiple times. And so the court does use the word bolster in that sense to elicit evidence. And when somebody attempts to elicit evidence that it must be true because he's said it a whole bunch of times. That's obviously not what's happening here. But more importantly, yes, in a way it could be read as certainly trying to make the trial testimony, the jury decide that the trial testimony was believable. But it's also, it could just as easily be read as impeaching the handwritten statement because we're saying that one's not true. And defense counsel is certainly allowed to do that. To turn back to this court's concern about eliciting a specific sentencing range. Before we leave that, though, it seems to me that this is just a sideways way of getting to a prior consistent statement. If you take a situation where he's in court and he's saying, I did this, the defendant on trial had nothing to do with it. And back when they offered me a deal, I said, in return for my testimony to the opposite scenario, I said, no, that's not what happened. What happened was I did it and the other guy didn't do it. So he said it then and he's saying it now. So why isn't that, that rejection of that plea deal, why isn't that just a prior consistent statement? Because defense counsel never tried to elicit anything he may or may not have said at that plea deal. There's no statement involved. What he did was say, what would you have gained, what you tried to do. Well, no, what about the question that you're so concerned with? Why didn't you take the plea deal instead of the murder, instead of the murder time? The answer to that would be, well, that's because I didn't take the plea deal because that's not what happened. And that's what I told them when I rejected the plea deal. Your Honor, I don't think, I agree we would hope that he would say I didn't take the plea deal because it wasn't true, but he doesn't have to say anything and this is what I've told people, I've been saying it. Essentially what's happening when he's rejecting the plea deal, if you say, why did you reject the plea deal at a prior time? Why did you reject the plea deal at a prior time? I rejected the plea deal because that wasn't true, what they wanted me to say. And so I said no. And when he says no, that's a prior consistent statement to what he's saying in court today. He's taking the same position. And that's bolster. Your Honor, it would be, I think, unfair to Mr. James to assume that that's what Mr. Stapleton would have said and that's what his defense counsel was trying to elicit. Well, what do you think the answer to that question would have been? As simple, I rejected it because it wasn't true. Well, that's what I just said. He rejected it because it wasn't true. Your Honor. And what's true is what I'm saying in court today, right? Yes, Your Honor, but I don't. Didn't it come out before the jury that he was being penalized more for telling the truth than he was to go along with the deal? Yes, Your Honor. The jury heard that he would have gotten less time on the original deal. That goes, again, to they weren't allowed to hear the specifics. They don't know what that less time really means. So how do we analyze the court's preclusion, if you will, of certain things, such as the actual number of years? Don't we review it for an abuse of discretion? Yes, Your Honor, that is what Mr. James set forth in his brief. All right, so can we say that the judge abused his discretion here when the jury was able to hear that he was suffering to his detriment by coming forth with what he believed or what he said was the truthful testimony? I mean, isn't that a fact that the jury did know about, that he was getting more time for the murder than he would have gotten if he had taken the deal? Your Honor, the court did abuse its discretion because it didn't allow it. The jury had some ability to evaluate Stapleton's credibility, but it was hampered in fully evaluating that. And that's what the court in Triplett said is a matter of right. Anything that is relevant to evaluating the witness's credibility is a matter of right, and that's what wasn't allowed to happen here. Let's talk about that 402 rule. Your position is that it doesn't apply in this case, right? Yes, Your Honor, and that the state never suggested that was the basis for an objection. But to turn... Well, but on appeal they can argue anything to support what the court did, can't they? When the state makes an objection, it's limited, makes a general objection, it's limited to the grounds of relevance. But on appeal they're trying to support the decision that occurred. I'm happy to address that. Well, anyway, the rule says that generally speaking, when these plea agreements fail between the state and the defendant, that you can't discuss them. Why should we allow a full discussion? I mean, there was some discussion, but this is a failed plea agreement. The reason 402 doesn't apply, 402F specifically, is that it only applies to the defendant on trial, and that's the explicit language of the rule and this court's own holding in People v. Pizzi and Illinois Rule of Evidence. Pizzi, weren't they talking about a witness? They weren't talking about a co-defendant or another offender, were they? No. That was specifically limited to a witness. Now, is this person, I mean, can't he fit into the category of a co-defendant? He was a previous co-defendant, but he's not the defendant against whom the plea is being offered, and that's the exact language of the rule. And Illinois Rule of Evidence 410, which was in effect at the time of the trial, also addresses this situation, and it specifically says that evidence of plea negotiations is barred in any criminal proceeding against the defendant who made the plea or was a participant in the plea discussions. But why is that the rule? What's the point behind the rule, that you don't really go into failed discussions? The entire point of both of those rules is to protect the plea bargaining process by not allowing someone to, for example, if Mr. James had contemplated pleading guilty, had engaged in plea negotiations, those failed, he went to trial, the state could not then argue, you can infer he's guilty because he engaged in these prior negotiations. That's the entire purpose of the rule, and that just has no bearing on this case at all. It would be an extension of the language and the case law to suggest that Rule 402F applies here. And it would also, for the reasons just stated, it would defy common sense to do that. To address the sentencing range concern briefly, though, Your Honor, one of the reasons objections must be specific to the trial is to give a defendant an opportunity to respond. Here, it's true, 27 years ago and 20 years ago in the Third District in People v. Brewer held that specific sentencing ranges shouldn't be elicited in order to protect the state from unfairness. But we would suggest that this Court should revisit those rulings, which it has not done in quite a while. One possible avenue to alleviate any possible prejudice is simply to give Illinois Pattern Instruction 1.01, which the state did not even request in this case, which is to tell the jury you are not to concern yourselves with punishment and sentencing. They didn't give it or it was given? They did not give that, Your Honor. They did not request it, and they did not make the specific argument at trial that this shouldn't be allowed because it's relevant to sentencing, so defense counsel never requested it either. It's our position that that would alleviate any potential prejudice. And in other contexts, for example, a common one which was even used in Mr. James' case, other crimes evidence, this Court assumes that juries can follow limiting instructions. So when a jury is told, for example, the defendant has several prior convictions, a limiting instruction is given and the jury, this Court presumes the jury can still be fair. That's how the law should work here. Is the complaint or the error of not allowing this complete cross-examination subject to harmless error? It would be here, however, Your Honor, the state did not make a harmless error argument. But we're not bound by anybody's briefs or concessions or whatever they didn't put in, but I'm asking you, and you've answered the question. Yes, absolutely, Your Honor. Yes, so do you think, can you say to us that if the jury was told that Mr. Stapleton was given 20 years and if he had gone along with the plea, he would have gotten 13, do you think that the jury would have found otherwise in this case? Yes, Your Honor, because I would suggest at least that the state cannot prove the jury wouldn't have beyond a reasonable doubt, which is their burden. And that is because one thing to support that conclusion is the state's own closing argument, in which it focused on Mr. Stapleton's testimony more than anything else. And it repeatedly argued that it was the truth, over and over. It also told the jury, the reason you can't believe Mr. Stapleton's trial testimony is he recanted it because he was afraid of James, even though Stapleton denied that. And defense counsel wasn't allowed to present an alternative theory for why that trial testimony was in fact more believable. Certainly there's other evidence against Mr. James, but most of it is explained away by Lee Stapleton's trial testimony. And the jury note is interesting in this case because it indicates they were, the only explanation for that note is that they must have been contemplating crediting Stapleton's trial testimony. And here they were not, because they said we don't know who taped the victim's face. That Stapleton's the one who says it was him, not James. So the jury had to have been considering crediting that trial testimony. And it was the most crucial piece of evidence in the case. And just very briefly, Your Honor, I would point this court to People v. Chavez. I realize the appellate court is not bound by the state's argument, but in Chavez this court held that where a state has the burden of proving an error beyond a reasonable doubt and it fails to make any such argument in its briefs, there is a procedural barrier and the court will refuse to address harmless error. Thank you. Thank you, Your Honor. And you'll have some time for rebuttal. Good morning, Your Honors. May it please the Court, Assistant State's Attorney Ron Gepazzi on behalf of the people of Illinois. Have you argued here before? I have not, Your Honor. Well, welcome to the First District. Thank you, Your Honor. The issue before the court this morning as articulated in defendant's written argument is whether, at trial, defendant was precluded from an opportunity to present their theory of the case and to present evidence in support of that theory, specifically that it was co-offender Lee Stapleton and Stapleton alone who was responsible for the first-degree murder for which defendants did trial. As part of the people's case-in-chief at defendant's trial, the people did call co-offender Stapleton to the stand. And though called as the people's witness, Stapleton testified on direct that it was he and he alone who was responsible for the armed robbery and first-degree murder of 65-year-old Edward Makoudis. Stapleton testified on direct that the drug debt that was owed was owed to him. He testified on direct that although a defendant went with him to the home of the victim, the defendant was just a passive bystander, while everything that transpired was between the victim and co-offender Stapleton. Co-offender Stapleton testified that it was he and he alone  stabbed him twice in the side, duct-taped his wrists and his ankles, his head and his face. Co-offender Stapleton testified that it was he and he alone who smothered the victim until he was dead. All of that came out on direct testimony. The people then impeached co-offender Stapleton with the two handwritten statements that he had given to Assistant State's Attorney Maureen O'Brien on November 30th and December 1st, 2003. Those two statements were vivid accountings of how defendant and co-offender Stapleton both participated in the armed robbery and murder. Doesn't the fact that he, Mr. Stapleton, subjected himself to a greater penalty, specifically 20 years versus the 13, suggest that he was giving up something and that he was being penalized for this testimony? And shouldn't the jury have been allowed to hear about the actual sentence to know what he was giving up? No, Your Honor. Why not? You were able to say that he was afraid of this other person and that's why he was doing what he was doing today. Why shouldn't they be able to show why he was doing their theory of why he was doing what he was doing today? There wasn't any testimony or anything to back up this idea that he was afraid of this man, was there? Only on redirect, Your Honor, when the prosecutor did ask him whether he was afraid of the defendant. And what did he say? He said no, Your Honor. Okay. But you argued that, that he was afraid of him. That's why he was doing this. Yes, Your Honor. Even though there was nothing really to support that theory. Just defendant's behavior in trial, Your Honor. What, his behavior of recanting? No, Your Honor. The people made mention of the way Coffender Stapleton furtively glanced at the defendant throughout his direct and cross-examination. The people asked Coffender Stapleton whether he had requested that his family be moved away from where defendant and his friends lived in Chicago, or in Bellwood, sorry. And also whether Coffender Stapleton had requested that he move cells and move tiers within the prison system. Now, in a case where there is a deal, clearly the defense would be able to get into that. True? Yes, Your Honor. The numbers, the sentencing, that would all be exploration for them to use in front of the jury. Absolutely, Your Honor. Why is this case so different? Because it's sort of like the other side of the coin. The defendant is saying, I didn't take the deal. I didn't want the deal because it wasn't what really happened. Those statements weren't true. Now I'm telling the jury what is true, and I have suffered great personal expense. I'm doing 10 more years as a result or whatever. Maybe that's stretching it. Seven. Yes, Your Honor. And this Court and many other courts have held that when there is a plea agreement entered into, when a witness's testimony has been secured for leniency, it is appropriate and it is necessary to go into the details of those agreements so that the jury can properly evaluate the credibility of the witness, can properly evaluate their motivations for testifying, any prejudice or any bias they may have. Well, the argument here is that his credibility wasn't allowed to be put forth correctly because he wasn't able to tell the jury that he had given up getting 13 in exchange for something he didn't want to do, and he's now facing, or he's doing, 20. I mean, why can they hear it in the case where there is a deal, but they can't hear it in a case where they haven't struck a deal? Because, Your Honor, if there's been no deal struck to secure the witness's testimony, any evidence going towards any failed plea negotiation truly has no bearing on the appearance or the testimony of that witness at the trial. But they're using it for the sole purpose of explaining why his testimony is truthful, because he did give up something by not going along with the deal. Yes, Your Honor, and that argument from defendant is predicated upon, it offers only one logical solution so far as defendant sees this problem, which is that you would only reject a plea deal if you were truly guilty of the crime. Well, wouldn't that just be the matter for cross-examination and redirect examination? That's just a question of... His actual motivation would be a question of fact, wouldn't it? He didn't plead guilty because... He wants to say, I did plead guilty because I didn't want to say something that wasn't true, and maybe the state would come back and redirect to say that. Isn't the real reason that he didn't plead guilty is because you don't want to be known as a snitch in the penitentiary? I mean, that's just a factual question. Yes, Your Honor. The question is what legal concept would preclude us... Clearly, they're asking us to make a ruling that hasn't been made before. Yes, Your Honor. And that is that someone can testify as to their motivation for rejecting a plea deal, thereby enhancing their in-court credibility. What concept of law would preclude us from going in that direction? Justice Palmer, I believe you asked counsel extensively earlier about prior consistent statements, and that is essentially the auspice under which any of this evidence was sought to be admitted. The statement that Stapleton... It's really an out-of-court non-action, Your Honor. The failure to take this deal is supportive of his in-court testimony that it was he and he alone who committed this armed robbery and murder. And that's under what auspice counsel sought... Counsel at trial sought to have this testimony admitted. And there was no prejudice, Your Honor. All the testimony was admitted except for two questions, which went to the specific number of years. What about that? I asked that question. The appellant claims that the jury wouldn't understand the import of this difference. They would just know, well, something less. It could have been six months. It could have been three months. But the jury wasn't allowed to know that he was giving up nine years of freedom by not testifying differently. And that would have made a significant difference. Your Honor, I don't think it can be said what kind of difference it would have made. I think what we can deduce is what came out during cross-examination, which was that co-offender Stapleton was offered a reduced charge that offered, quote, less, much less time, that if he'd taken the deal for armed robbery, he would have been eligible for early release for good behavior, not a possibility that was open to him had he pled guilty, which he did to first-degree murder, that he served the absolute minimum sentence for first-degree... or he was sentenced to the absolute minimum sentence for first-degree murder. All of these sentencing questions actually did come out. And the jury was able to evaluate that he received past co-offender Stapleton passed on a great deal on the armed robbery, and instead he pled guilty to first-degree murder, and he took the absolute minimum sentence. This was more than enough to evaluate the co-offender's testimony at trial and his credibility at trial. Again, as Your Honor noted, there is not a single case in Illinois that stands for the proposition that defending can bolster in-court testimony with evidence of a failed plea agreement. This simply does not exist in the case law in Illinois. The appellate relies generally on Tenney and says that the concept from Tenney was that the Supreme Court recognized that what someone gives up or when someone does something to their detriment that enhances their current position. Yes, Your Honor. And again, most of that, almost nearly every aspect of that failed plea agreement was admitted to the jury. They heard at least five questions going towards the relative sentencing, the relatively lighter sentencing, that co-offender Stapleton faced had he taken armed robbery as opposed to first-degree murder. What they didn't know was nine years. They did not know it was nine years, Your Honor. That's correct. But they did know that it was much less time. Less, much less time is what came out. They knew that he faced no possible- Much less time could be a week. I beg your pardon? Much less time could be a week. It could be a week, Your Honor. It could be 30 years. We don't know. We don't know what the jury knew. What we do know that the jury knew was that from the note that they passed out to the judge during deliberations, they knew that both were present in the home of the victim. They knew that an armed robbery had taken place. They knew that the victim had been murdered. And though they didn't know who actually duct-taped the victim's mouth and nose or who actually physically caused the death of the victim, they knew that they were both responsible. The jury found beyond a reasonable doubt that the defendant was guilty of first-degree murder. None of that truly had nothing to do with the relative sentencing of co-offender Stapleton. Anything else you wish to add? No, Your Honor. Because defendant's defense was fully fleshed out, was fully supported and submitted to the jury for their consideration, because they were able to argue extensively at close that a negotiation had taken place between the people and co-offender Stapleton, because they were able to bring out that Stapleton passed on such a great deal for armed robbery and instead pled guilty to first-degree murder, people believe that their case was fully made, submitted to the jury, and projected by the jury. And for that reason, we respectfully ask that this court deny defendant's appeal and affirm his conviction. Thank you. Ms. Moran. May I please report two very brief points on rebuttal. The first is to correct the State's contention that only two questions were sustained. Actually, it was five. And the prior consistent statement rule would be a justification at best for one of those, which is Justice Palmer's concern about the question why did you reject the plea deal. The prior consistent statement justification would not apply to the questions about the specific terms of the 13 years. There were two questions about that, and also a question about the sentencing range and the specific sentence received. Prior consistent statements would not be a justification for sustaining objections to all four of those questions. Secondly, Your Honors, the State concedes. Let me answer this. If there was a prior, there was a motion limiting prior to trial that is ordinarily granted that, as you discussed, that the jury should not be told the potential penalties that Mr. James was facing. Right? Yes. If the jury was told that, I don't know, Mr. Stapleton, right? Yes. That Mr. Stapleton was offered 13 years for armed robbery, and that was a reduced charge for murder, and that he would have gotten more for the murder, wouldn't the jury then be basically being told that Mr. James was facing at least 14 years? The jury could, the jury would know Mr. Stapleton was facing at least 14 years. It is our position that they would not necessarily could speculate, of course, but they wouldn't know and it wouldn't be a violation of the motion in limine, because there are no specific questions or information about the sentence James is facing. Well, I mean, let's be realistic about it. The jury is going to go back in the jury room and they're going to say, well, Stapleton got 13 years for armed robbery. That was a reduced charge for murder. James is facing murder. So can't they just, I mean, aren't they just going to logically assume that James is facing at least 14 years, something more than 13 for murder for a greater charge? Your Honor, that's exactly why IPI 1.01 should have been given. And this Court should presume, if it were given, that the jury would not go back and do exactly that, because this Court assumes that juries follow the law. And if they've been told that. That doesn't answer my question. I understand that you think that this could be limited, but if there's a motion in limine in place that says, let's not tell the jury what James is facing, aren't you indirectly telling the jury that James is facing at least 14 years? And isn't the way the trial judge did this kind of like a compromise? You know, we told the jury that Stapleton got a deal or was offered a deal. It was for less time than murder time. He turned it down. Isn't what the judge did a way to save the motion in limine ruling? Your Honor, it could certainly be read as a compromise, but if so, it's an inappropriate compromise because what should have happened is, of course. But if the case law, if the case law, as you said, if Brewer says that the jury should not know what James is facing, then isn't it appropriate for the trial judge to take steps to make sure that the jury doesn't know that it's going to be at least 14 years? Your Honor, the case law is split. Graves says one thing, Brewer says another, and this Court hasn't addressed it. The First District hasn't addressed the issue in 27 years. So it should readdress that issue, and consistent with the law on pattern instructions and limiting instructions specifically, it should find that that's not a concern unless the defense counsel is specifically attempting to elicit information about the defendant's sentence. Very briefly, to my second point, Your Honor, the State concedes that the specific terms of an accepted plea deal would be admissible, but insists that generalizations are enough when the plea deal is rejected. Where the case law is clear, we realize this is an unusual fact pattern, but where the case law is clear that the specific terms of a deal should be allowed when the plea deal is accepted, if this Court finds that information about whether a plea deal has been rejected is permitted, then generalizations aren't enough. Let me ask you to speak to something that I made the State speak to. Since, as you said, we're talking about general objections that are relevance objections, or relevance rulings, does it necessarily follow that when someone refuses to testify in one way for a plea deal, and then testifies another way, does it necessarily follow that that means that he's more believable? No. Aren't there other explanations? Yes, Your Honor, but defense counsel wasn't allowed to elicit the explanation in this case. So there could be other explanations, but he wasn't allowed to question about it. I'm not sure if you understood my question. In that particular scenario, it would be the State who would be trying to elicit the other explanations. The defense would be saying, well, the reason why he didn't take the plea deal and testify the way the State wanted him to was because today he's telling the truth, and the other version was not the truth. I think the State would come back and say, well, there's a myriad of other reasons why somebody doesn't take a plea deal and testify against someone. My question is, you know, does it necessarily follow, and therefore become relevant? That's not the real definition of relevance. I'll take a step back. I mean, does it become relevant? Does it make it something more likely than not that he's more believable because he didn't testify against somebody? Does that necessarily follow? When, you know, we could probably tick off five or ten reasons why somebody refuses to testify for the State. Your Honor, no, I don't think this Court should create a broad rule that it necessarily follows, but here the only, the reason it should be relevant here is that the only other reason even suggested by anyone is the State's, as the State mentioned, it attempted at length on redirect to elicit its theory, which was that he rejected the plea deal because he was afraid of James. And that, Stapleton denied every single one of those questions the State answered. So there were two possible explanations proffered by the parties here. The State was allowed to ask their questions. Stapleton denied that as a reason. And defense counsel wasn't allowed to ask his questions. Is there any, just to tie this up, is there any authority in the case anywhere where a court has said that a person's in-court testimony is more believable because he refused to, to plead guilty and testify in a different way? Is there any authority for that? Your Honor, not one way or the other. The Illinois courts have never addressed this situation. So there's not authority rejecting it and there's not authority accepting it. Well, anything else that you would like to add, Ms. Moran, at this time? No, Your Honor. All right. I would tell both sides that the arguments were very well presented, the briefs as well. And we will take this matter under advisement. Thank you. Thank you.